The next matter listed for oral argument is Warbot v. Warden Hudson County Correctional Facility. Let me just note while council approach council table, two matters. First of all, I'm not consulted with the two colleagues on the panel prior to stating this, although I have consulted with them on one aspect of it. First of all, as you know, we entered an order denying the filing of the amicus brief offered by the ACLU, and much as this court has many times appreciated the work of the ACLU, whether as a party or as an amicus, the brief was filed very late in the game, so to speak, and that is not the preferred practice of this court, and that's the reason for our refusal. The other point, and one which I have not discussed with council, but I'm going to say it just in my capacity as chief judge, is that I was disappointed in the very late filing of the 28Js in this case. We all knew that the Supreme Court case was out there almost for a month, and again, 28Js at the 11th hour is also not the better practice for us, and so while we've received your submissions and will consider them, I just admonish council that in future cases they file such submissions on a more expeditious basis. With that said, Mr. Bertolini. Good morning, Your Honor. My name is Simone Bertolini. I represent Appell, Igor Borgo. May I reserve three minutes for rebuttal? Granted. May I please record? Igor Borgo has been in custody at the Hudson County Jail since April of 2016, pending his removal proceedings. There's no justification. You should have mentioned right there something that as far as I know does not appear in the record, and I'm very curious about it. What is the status of the underlying removal proceedings? Your Honor, I don't represent him in the removal proceedings, but I spoke to his deportation lawyer, and I've been informed that the trial is proceeding, and they have already had two hearings on the merits. I think when the briefs were filed, I think there was a pending hearing for January of this year. Is that right? There was a hearing, I believe. A second hearing for them. Yes. I think it was the first individual hearing, but basically the merit hearing. Then there was another one scheduled in March, if I'm not wrong. But in any event, the next court date is for May, and I have been advised that there's no expectation that the proceedings before the immigration judge will terminate at least for another year. All right. Thank you. There's no justification to this prolonged civil detention. The government has already conceded in the brief that they cannot prove that Mr. Borgo is dangerous. We will agree to that, but for different reasons than what the government represented to this court. The government stated in their brief that they cannot prove that Mr. Borgo is dangerous because the evidence is located abroad. However, they are using an interporter notice to detain him under the discretion and authority of ENA 2368. So on one end they're using a warrant that was generated on charges that were filed abroad, and on the other end they're saying that they cannot prove that he's dangerous. The reality is that they cannot prove it. Mr. Berolini, are you aware of an article which appeared in the New York Times in November of 2016 on how Moscow uses interpol to pursue its enemies? I didn't read it. I am aware of the questionable practices of the Russian government, and I believe that what Your Honor is suggesting is that most of the times the Russian government is issuing these interporter warrants just as a retaliation and just as a pretext. And in fact here what we have with Mr. Borgo is a case where he's accused of embezzlement in a case where he was constructing a shipyard in Russia in a project that cost approximately $260 million, and the allegations are that he overestimated and he overcharged the construction price of 19%. And the only evidence that would support these allegations were a single expert report. This matter was already litigated in a court of jurisdiction in Russia. The trial court dismissed the allegations, and the Court of Appeal of Russia affirmed the dismissal. But the most important thing that the Court of Appeal of Russia stated in their opinion is that criminal investigations against Mr. Borgo in Russia are still at the preliminary stage and have not been filed with any court. The government insists that Mr. Borgo is a fugitive, but I respectfully submit to this Court that under U.S. law Mr. Borgo would not be a fugitive. If criminal charges have not even been filed... That's because you're saying the interpol red notice is wrong. The interpol red notice on its own does not give authority to anyone in this case. I'm sorry, you're saying it is wrong, right, or not? It's unfounded. Okay, and you want us to have a trial? You want us to call a witness to the witness stand to litigate the validity of the interpol red notice? No. That's not usually what we do here. Correct. So what are we supposed to do with the interpol red notice? You want us to disregard it? You want us to... It is what it is, and I don't know what we can do about it. Well, certainly at this point there's nothing we can do about it, but I was curious as to Mr. Bertolini's knowledge of what had been going on with these red notices, which often are without basis, and it certainly is not for this court to make a determination on that, but in my mind it's a factor to consider in an indeterminate detainment, detention of Mr. Barbot if there are questions that need to be determined before a court that can make factual determinations as for the justification of finding that he's a danger to the community. Mr. Bertolini, given the limited time that all counsel had that you have right now, can we turn to the real nub of your position on behalf of Mr. Barbot, which as I understand it generally is the belief that he has been detained for an unreasonable amount of time. Yes, he has been detained for two years. And he is a detainee pursuant to 1226A, is that right? Correct, Your Honor. He's had a bail hearing. He did have a bail hearing at the beginning of his remand proceedings. The judicial judge... And he's had more than that, right? I mean, he had, I guess that's approaching, well, almost two years now. He was detained on April 22, 2016. He had a hearing where Bond was denied on May 31, 2016. Correct. You took that to the BIA. The BIA denied Bond. He moved for reconsideration of the bond denial in February of 2017. That is the crucial part here. Okay. The redetermination hearing, because after one year that he was in custody, the immigration judge should have placed the burden on the government to prove that he is a danger to the community. During the first bond hearing... Correct, Your Honor. During that hearing, the immigration judge should have placed the burden of proof to the government to prove that Igor Barbo is a danger. Why? Under what authority? Under the authority of DEOP, of this Court of Appeal. The Chavez Office. Yes, the IOCC case. That's the most prominent reason to say it's not applicable here. And it was Chavez's office, right? Yes, Your Honor. But in this case, profound differences between subsection A and subsection C, right? Very profound. In fact, in 236, under A, your client gets and has gotten process, process which is not enabled by subsection C. Is that correct? Correct, Your Honor. But after the detention became unreasonable, he was supposed to have a hearing where the government brought the burden of proof that he's dangerous. And this is suggested even in the Moore v. Kim, where the concurring opinion of Justice Kennedy suggests that, at one point, when the detention becomes unreasonably prolonged, an alien could be entitled to a hearing where the government has to prove. Wasn't Justice Kennedy in that concurrence referring to a Joseph hearing? Yes, Your Honor. And in that case... Okay, go ahead. In that case, the alien did not even request a Joseph hearing. But a Joseph hearing is afforded under the agency rules in C cases, correct? Yes, I understand the question. I'm asking you, it's my understanding, and please correct me if I'm wrong, that the Joseph hearing in the immigration context is afforded in C cases, 1226 C cases. Yes, Your Honor. And again, we get back to the fact that this is not a C case. This is an A case. So I'm curious to know what's your best argument to convince us that the rule in an A case where detention is not mandatory should be identical or similar to the rule in a C case where it is mandatory and where we held that a hearing was required in order to save the statute from unconstitutionality, right? That would be the doctrine of constitutional avoidance in that case, right? In Diop. Yes, Your Honor. But the court specified in the opinion that the question of the case was whether Diop's prolonged detention was unconstitutionally unreasonable and therefore a violation of the due process clause. My reading of the Diop case is that the court decided whether the prolonged detention violates due process, not whether the statute provides for automatic bail review as the Supreme Court criticized in Ninth Circle. Does anything in the statute or any other provision of law bar your client from returning to the IJ with another application for bail? Your Honor, you can file for another application for a bail, but the problem here is the application... Which someone could not do under subsection C, right? Yes, Your Honor. But if we hold another bail hearing and the immigration judge misplaces the border approve, it's meaningless. If the immigration judge continues to insist that Borbal must prove that he's not dangerous, we're not going anywhere. That is not a bona fide hearing. So under your view, it's not the government's burden initially. Initially, at the first hearing, it's your client's burden to show that he's not dangerous. If he loses that hearing, it's your position, as I understand what you're saying this morning, that a month later he can file a new motion for bail, and just because of the passage of the 30 days, it's no longer your client's burden to show he's not dangerous. The burden has somehow shifted to the government to show that he's in fact dangerous. No, Your Honor, that's not what we're saying. We're saying that after a year, when the detention becomes a reasonably prolonged... Okay, so after a year is when the burden shifts. That's what was said by this court in Chavez-Alvarez. Which was a C case. C case. Right. Where there's no hearing at all. Correct. No process at all. I guess the question then becomes, does the one year, the sort of presumption that a year is a prolonged detention that would require the shifting of the burden, does it matter that in the C case, the person never had any process at all, and to Chief Judge Smith's point here, your client did get some process already. And you're saying the fact that your client got some process already is immaterial. Your Honor, in 236-C cases, at one point the government will bear the burden of proof that the alien is dangerous. If Your Honor is correct that because the board already had a hearing on 236-A, then we will have to reach the conclusion that it would be stupid for the government to lock up people on 236-C because they could just detain people on 236-A. It's the government's choice to make, is it? If the government has discretion just to willy-nilly say whether they could sort of indiscriminately put people under A rather than C, I believe they have that discretion. Congress knows very well how to draft a statute that provides who ought to prove or who has to prove extraordinary circumstances or some change in circumstances, doesn't it? The passage of time itself is the change of circumstances. I understand. Judge Roth, do you have any additional questions at this point and before rebuttal? No, I do not. All right. Thank you very much, Mr. Bertolini. Thank you. Ms. Kelly. Ms. Kelly, would you mind starting where Mr. Bertolini left off and address this concern that I have consistent with what he said, that the government has the ability to just indiscriminately classify people under A and treat them under A rather than C? That's incorrect, Your Honor. Under 1226-C, which requires mandatory detention for a certain category of criminal aliens, that determination is made at a Joseph hearing. The Joseph hearing, the primary question there is whether the applicant for bond release needs to be detained under C and therefore won't have the opportunity to show in an individual capacity that he's not a danger or a flight risk, that he's assumed to be one or both of those under C. That's not the discretionary determination, Your Honor. For 1226-A, the government may detain or may release, and the regulations provide that the burden is on the applicant for release. This case is a good example of why that burden is reasonable, assuming the DL reasonableness standard is still what we're using after Jennings. Okay. Well, that burden is at the beginning of the detention. But say Mr. Borlaug had been detained for two years. Doesn't he have a right then to have that detention reexamined? The due process clause would attach, Your Honor, and he could petition in habeas for additional process, and he would have to demonstrate to succeed in that petition if the process already provided to him was constitutionally inadequate. Here in this petition, there are no such allegations whatsoever. Okay. If in this petition here he had said, I don't have the opportunity to have this reexamined, therefore I'm being denied due process, that that would be adequate to bring it up, say, at the end of two years? Ultimately, to prevail, Your Honor, the court would have to engage in a more robust constitutional analysis because he's already had process provided to him. Is there any limitation on the number of times he can seek that process? I think that was two years ago. And doesn't there come a certain time when he should have the right to have a review of that? Judge Roth, you and I were talking over one another. I couldn't hear you. You and I were talking over one another, so you're going to have to repeat your question for the benefit of counsel. Okay. What I'm saying is that once there has been a subsection A determination, that doesn't mean that you can hold that detainee indifferently for years and years without any further review, does it? Well, it does under the statute, Your Honor, according to Jennings. Jennings says that the statute does not include any limitation on that. And so then we have to think that there is a constitutional aspect that needs to be examined, right? Correct, Your Honor. Okay. And in this case, the petitioner has said that he is being denied due process of periodic review and that constitutionally he has that right to have his detention reexamined. Do you disagree that he never, ever will have a right to have that reexamined? He has the right to have it reexamined, Your Honor. He can move for another custody determination. Is there any bar to the number of times he can go back and seek reconsideration of the original bail determination and or demonstrate some kind of change in circumstances? No, Your Honor. So, I mean, we are stuck with the language of, for lack of a better term, we're stuck with the language of the statute, 1226A, with the regulations that apply, and the no man's land we're in, for lack of a better term, is the undetermined constitutional parameters of reasonableness or unreasonableness. Isn't that where the Q&A between Judge Roth and you led us? Okay, Your Honor. Jennings doesn't answer that for us, does he? Well, Jennings answers it in one respect, we believe, Your Honor. You can't possibly be suggesting that the government's position is that, while it's not this case, this kind of detention can go on ad infinitum. The statute does not lead us. We know what the statute says. And, of course, due process attaches. Okay, good. So, is it an appropriate analog, while far from a perfect analogy, to look to our jurisprudence on pretrial detention in criminal cases or even the existence of the Speedy Trial Act and procedural rules that assure speedy trial on the criminal side? The effect for the detainee is still the same. That person's in the slammer one way or another. What other authority extends the Speedy Trial Act to immigration detention? I'm not asking you that. I'm asking that for purposes of, in another case, eventually determining reasonableness, the fact that we require and that various states require trial within a limited period of time, subject to extensions, which also are going to have to be reasonable. Might that be some indicia, in the right case, of what is reasonable or unreasonable in terms of detention? Sure, Your Honor. Under traditional due process tests, it would be important for the district court on a habeas petition, assuming that those claims are brought, which they're not brought in this case before the district judge. But having them brought, then it would be the duty of the district judge to balance the deprivation of liberty, the risk of erroneous deprivation, and the burden on the government of providing additional process. We don't get to those steps here because Mr. Warbot hasn't alleged that the process he already received was itself constitutional division. He didn't cross this violation because of the failure to shift the burden of proof. Yes, Your Honor, and he only says DEOP for that proposition. DEOP and Chavez-Alvarez, even presuming that Jennings does not change the analysis there, still provide for a case-by-case analysis. Here, the facts are very different because we're talking about an individual who arrived here after potentially having committed a serious crime abroad, potentially using the United States to flee law enforcement. DEOP committed his crime in the United States about three years before the case was decided. The evidence was here in the United States of the crime. And Mr. Warbot's contention is that his proceedings, his bond proceedings, were unfair because the government wouldn't meet its burden of dangerousness. We don't concede that we wouldn't meet that burden, but there is a risk that we wouldn't meet that burden if the burden was shifted. And it's not reasonable in this individualized analysis to place the burden on the government. Because it's harder for you to get that evidence than it would be for him. Yes, Your Honor, he has a much more idea of what happened than the government does. And that's clear from reading the bond denial decision of the immigration judge, the initial decision, where he posits in the determination that Mr. Warbot included some evidence of general abuse in Russia of the Interpol and general corruption. But there's nothing— And that's an ongoing problem, isn't it, the Russian misuse of the Red Notices? It may be, Your Honor. I mean, I hope you're aware of that. It may be, Your Honor, but still, before the immigration judge, Mr. Bullitt had the opportunity to explain why, as an individual, he was subject to corruption or abuse of the system, rather than just knowing facts. He did explain. He said that there was a civil trial, and he was found not to have committed fraud. And, you know, granted, the immigration judge made that decision, and that has gone by the wayside. But you're talking generally about these Red Notices, and there's a lot of dispute about the validity of these Red Notices and about the games that the Russians are playing with Interpol procedures to harass the political opponents of the present regime. Your Honor, in response, if much of that is going on, the immigration judge can still ultimately reach a finding that Mr. Robot is not dangerous if he presents enough evidence. It's not even that he's generalized evidence, necessarily, against what's happening in Russia, but he has cited that he has family contacts in the United States. They could perhaps testify to his character in the bond hearing. He could explain events leading up to the allegations brought against him and explain exactly what did happen. The civil suit did not exonerate him. It just determined that there wasn't enough evidence against him to find liability. There wasn't enough evidence of fraud, and that was upheld. That sounds like, if someone accused me of fraud, I would consider that an exoneration. It may be, Your Honor, but it may be as well that the immigration judge found that he did not present sufficient other evidence about what happened. He didn't testify to those events himself. Well, anyway, we can't, it's not our place to reexamine that decision. Correct, Your Honor, and also he can still, as we've discussed, there's no number limitation on how many times he could seek a redetermination under changed circumstances, such as he now has relatives available to testify or he's now aware of additional information that he didn't have before or any number of circumstances. I want to go back just for one minute to Chief Judge Smith's statement about reasonableness. The reasonableness inquiry is different from the traditional due process test, and one reason that it appears that Dieppe would not stand after Jennings is that Dieppe applied a pure reasonableness test, which it gets from its reading of the statute. Dieppe says it has to presume that the statute contains this implicit reasonableness limitation in its constitutional avoidance rationale, and then it applies a reasonableness standard to Dieppe's detention, finds it unreasonable, and then provides a remedy, which is a bond hearing, which is where we will get the burden of proof. Under Jennings, it's a pure constitutional analysis, a due process analysis that's required, so the question really shouldn't be is the detention unreasonably prolonged, but there needs to be a very robust, individualized analysis in these cases. What is the liberty interest? It should be identified clearly. What is the burden on the government, and what is the risk of erroneous deprivation? Ultimately, due process is about the risk of erroneous deprivation, as the Supreme Court has said. It's not about advantaging one party over another, and here the allegations are not that there's a disadvantage. Mr. Borbaugh has only posited that if we bear the burden, we lose. If he bears the burden, he loses. That's not really a strong due process claim. Just saying that there's no explanation on Mr. Borbaugh's part that the burden shifting will decrease the risk of erroneous deprivation. Indeed, there are no allegations. He probably hasn't really articulated his liberty interest, which could be different from the liberty interest in Dieppe. As someone who came to the United States after these events in Russia may have taken place, who didn't commit his crime here, that may change the interest analysis. Also, the burden on the government would be different, because we don't have the evidence here, because much of the evidence is located abroad. Mr. Borbaugh has more evidence than the government does. The other thing I would like to state in closing is that this full constitutional analysis is really important as a matter of policy as well, keeping in mind that the INA is a compromise, and that when enforcement provisions that Congress anticipated are limited either by the statute or by the Constitution, that impacts the rest of the law. Presumably there are people who conceded to certain items regarding numbers of immigrants allowed and other things because of those enforcement provisions. But certainly we don't close our eyes to the Constitution, despite what compromise may have occurred, right? Absolutely, Your Honor. Our due process absolutely attaches here, that in this particular case, Mr. Borbaugh has not brought allegations to show why what he received procedurally was inadequate. So here the case must be dismissed, and the whole report must be affirmed. Thank you very much, Ms. Kelly, and we'll hear Mr. Bernalini on rebuttal. Your Honor, so we have been crying a lot with that, because the immigration judge did not place a burden on the government. That's a due process violation. I would like to point to the court that if the court were to side with the government, then non-criminal aliens would receive a better treatment than criminal aliens, because criminal aliens at one point would have a hearing where the government bears a burden of proof that they are dangerous and that their detention is reasonable. Instead, if we conclude that Borbaugh doesn't have the right to a hearing where the government bears a burden of proof, because he already had a hearing where he bore a burden of proof, then it would be disadvantaged compared to criminal aliens, which at one point were criminals. I mean, they were dangerous to the community. The government is supposed to receive six cases using the presumption of dangerousness, because at one point they were dangerous. Mr. Borbaugh has not been convicted of any crime. He's presumed to be innocent. As Judge Roth suggested, there's an abuse of these red notices in Russia. The allegations have already been litigated in a court of jurisdiction, and the Court of Appeal of Russia dismissed the appeal. Also, the very nature of the charges here, embezzlement. There is nothing violent in an embezzlement statute. If the Court were to side with the government, we would open to horror scenarios where the government could detain any visa-holders alleging that they have engaged in any non-criminal violation, like, for example, texting and driving, because that's potentially dangerous to the community. That goes backwards. The Western District of New York, in a recent case called Anno v. Sessions, opined that an alien who is only subject to discretionary detention under 236A would seem to have a greater legal interest than a criminal alien subject to mandatory detention under 236C. Now, as I just said, just because he had a hearing, it doesn't mean that the government would be allowed to never bear the burden of proving that he's dangerous and that his detention is unreasonable. In 236C cases in New York, in Chavez Alvarez, the government had to prove that they were dangerous. Here, the government would never bear the burden of proof. Mr. Barbo could sit in jail for another five years while he is litigating his case, and he would be convicted for something that he wasn't convicted. He could ultimately win his asylum case, and he would have spent five, six, seven years in jail for nothing. If the court doesn't have any other questions. Thank you very much, Mr. Berlini. Thank you, Ms. Kelly. We thank the counsel for their helpful arguments. We'll take the matter under advisement. Judge Roth will give you a call in about 15 minutes to conference the case. Okay. Does Greg have your telephone number? He does. All right. Thank you very much. We'll ask that the clerk adjourn the proceedings.